GheeN, Judge,
delivered the opinion of the court:
Adolphus Busch, a resident of the State of Missouri, died October 10, 1913, and by his will appointed as executors thereof his widow, Lilly Busch; his son-in-law, Edward A. Faust, the plaintiff herein; and Charles Nagel. These executors qualified and proceeded to administer his estate, which exceeded $30,000,000.
The statutory commission allowed executors by the laws of Missouri at that time was 5 per cent of the value of the assets and cash distributed, but at a conference held by the executors and August A. Busch, the eldest son of the testator and one of the largest beneficiaries under the will, in May, 1914, it was agreed that this statutory commission would not be claimed by the executors, but in lieu thereof Charles Nagel should receive $300,000; the plaintiff, Edward A. Faust, $150,000; and Mrs. Lilly Busch, nothing. Prior to the conference, the plaintiff had already received on account of his commission $21,666.67; but after the conference one of the members of the decedent’s family having expressed the opinion that the plaintiff should take no fee for his services as executor, the plaintiff thereupon agreed by written instrument that he would not take any fee and paid back to the estate the amount which he had already received. Later, in November, 1914, on the advice of counsel, the plaintiff repudiated his agreement to take no fee and asserted'a claim for full commission as allowed by the statute. Mrs. Lilly Busch being then absent and in Germany, no action was taken until her return in 1917, when, upon her consent being given to the payment of $150,000 to plaintiff, this fee was *681 paid to him in February, 1917. In the meantime, the plaintiff had employed counsel to prosecute his claim against the estate at an expense of $10,000, which was subsequently taken as a deduction by him and allowed by the Commissioner of Internal Bevenue in computing the income tax due from the plaintiff in the year 1917.
The main issue in the case is whether this fee of $150,000 was taxable in the year 1914, when the original agreement was made between him and the other executors that he would accept this sum of $150,000, or in 1917, when it was actually paid to him; and also whether it is subject to an excess-profits tax. There being no excess-profits tax in 1914, the last question will apply only in case it is found that the plaintiff’s fee as executor is taxable in 1917, and this question will first be determined.
It is true that the law contemplates and the regulations provided that income which is credited to the account of or set apart for a taxpayer and which may be drawn upon at any time is subject to tax for the year during which it is so credited or set apart. • Although not then actually reduced to possession, it also appears that there was sufficient assets in the hands of the executors to have paid the $150,000 fee to the plaintiff in 1914, but there is no evidence that this money was at any time set apart to him as a fund for the purpose of paying his fee nor that the executors or the court directed it to be paid. The other executors in fact could have withheld the payment until the time came for the final settlement of the estate if they had seen fit, but beyond all this the plaintiff made payment impracticable by making a statement in writing that he would not accept anything. Subsequently, he repudiated this statement and demanded his full fee. In this situation the other executors declined to take any action until Mrs. Busch, who was absent in Europe, returned. Finally, in 1917, the matter was settled by paying the plaintiff the sum he had originally agreed upon, namely, $150,000, together with interest thereon in the sum of $20,192.03, being computed from the dates when payment was made to his coexecutor Nagel. Under these circumstances, we think it clear that there was no constructive *682 receipt of this fee in 1914 and that it was properly taxable as a part of his income for the year 1917.
The next question is whether this fee was subject to an excess-profits tax. The report of the special agent, which reviewed the plaintiff’s tax return for 1917, shows that this fee of $150,000 was not only included as part of plaintiff’s income for that year but was assessed under the provisions of the excess-profits act of 1917, which applied to profits made in a trade or business, and where there was no invested capital required the payment of a tax of 8 per cent of the net income of such trade or business.
The Treasury regulations (article 8, 'Regulations 41) construe the term “ trade or business ” as an activity for gain or profit entered into with sufficient frequency, or occupying such a portion of the taxpayer’s time or attention as to constitute a vocation. But the regulations also state that “ Gains or profits from transactions entered into for profit, but which are isolated, incidental, or so infrequent as not to constitute an occupation ” are not subject to excess-profits taxes.
There is nothing in this case that would bring this fee within the scope of these regulations. An examination of Finding VI will show that his service as executor was “ isolated ” and “ incidental ” to his other activities, which as shown by Finding VI were very numerous; but neither before nor since has he ever acted as the executor of any other estate except that of his father and mother. It may be difficult to name any particular business as being that of the plaintiff, and his other occupations would not prevent his giving considerable time from May to November, 1914, to his duties as executor, but there is nothing in the evidence to show that the principal part of his time was occupied w,ith this business. In fact it would be a fair inference, taking into consideration the numerous other duties which he had, that only a comparatively small part of his time was so used. It is quite plain that being an executor did not constitute his vocation. It was not his profession or anything that he held himself out as prepared to do. See Cadwalader v. Lederer, 273 Fed. 879; affirmed by the Circuit Court of Appeals in 274 Fed. 753.
*683 The plaintiff’s income tax for 1917 should have been computed by including the executor’s fee (after deducting the attorneys’ fee paid in connection therewith) in the gross income of the plaintiff, but it should not have been assessed with the excess-profits tax. When so computed, the plaintiff is entitled to recover the difference between the amount with which he was properly taxable and the amount actually paid by him for that year.
It seems to have been assumed by plaintiff that the overpayment under the rule laid down would be the amount of the excess-profits tax, to wit, $11,184, but the proof is not sufficient to show the correct amount of the refund. An examination of the report of the Government’s special agent, offered in evidence, shows that the amount of the excess-profits tax assessed was deducted in order to ascertain plaintiff’s net income. The evidence does not show how the computation of the tax was finally made but it is clear that no such deduction should be made. In order to ascertain the refund to which plaintiff is entitled the correct amount of his tax must first be computed in accordance with the rules laid down in this opinion. As there is not sufficient evidence to enable this to be done, the cause will be remanded to the general docket for further proof, and when the amount of the refund is determined judgment will be entered accordingly. It is so ordered.
Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.