E. M. Elliott, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 16693.   Promulgated February 19, 1929.

William S. Pritchard, Esq., for the petitioner.
Arthur H. Murray, Esq., for the respondent.

TRUSSELL: The petitioner contends that certain losses, paid in cash during 1921 and 1922, are subject to the provisions of section 204 of the Revenue Act of 1921, allowing the deduction of net losses from net income of succeeding years. The amounts of the losses are not in controversy and it is not disputed that they are deductible from income for the year in which sustained. The question for decision is whether the losses resulted from a business, as they must have to come within the statutory definition of "net loss," in section 204 (a) of the Revenue Act of 1921, reading, so far as material here, as follows:

That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer * * *.

The pertinent regulations of the Commissioner are contained in article 1601 of Regulations 62, and provide:

The term "net loss" as used in the statute means only a net loss resulting from the operation during the taxable year of any trade or business regularly carried on by the taxpayer. * * * In order to be entitled to claim an allowance for a "net loss" the taxpayer must have suffered an actual net loss in a trade or business during the taxable year. * * *

The petitioner was active during 1920, 1921, and 1922, in the purchase and sale of cotton futures and corporate stock. The transactions were conducted through a firm of cotton merchants and brokers with whom he had been dealing since the fall of 1917. The extent of these activities prior to 1920 is not shown, but we do know that the purchases and the sales, considered as separate transactions, amounted in number as follows: during 1920, 71 transactions; during 1921, 71 transactions; during nine months of 1922, 58 transactions. In point of time the petitioner devoted about 75 per cent of his business hours to the dealings in cotton futures. The transactions were all separately authorized by him and they were the results of his constant personal attention to the business. The purchases and sales occurred with regularity throughout the years and period. The futures were uniformly disposed of prior to the delivery dates. The net results of the transactions were disastrous, financially. Losses were suffered, the amounts of which are set out in the findings.

The respondent argues that the petitioner, in order to sustain his contention, must show that he was *regularly* engaged in the business of buying and selling cotton futures and that such transactions constituted a trade or business. We are in agreement with this and, furthermore, we are of opinion that the petitioner has amply qualified in regularity, whether tested by the number of transactions, in

the amount of his personal time and efforts devoted to the business, or in the duration of the period in which he was active. . Since the statute extends the benefit of the section to *any* business it is not greatly material that we are satisfied that the dealings in cotton futures were, at least for 1921, the principal activity of the petitioner.

What constitutes a business has previously been considered in a number of cases. In *Oscar K. Eysenbach*, 10 B. T. A. 716, we approved definitions of "business" which we will repeat here:

> Business is a very comprehensive term and embraces everything about which a person can be employed, Black's Law Dict. citing *People ex rel Hoyt* v. *Tax Comrs.* 23 N. Y. 242, 244. That which occupies the time, attention and labor of men for the purpose of a livelihood or profit. 1 Bouvier's Law Dict. p. 273. Approved in *Flint* v. *Stone and Tracy*, 220 U. S. 107; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503.

In *J. J. Harrington*, 1 B. T. A. 11, we distinguished between isolated transactions and activities constituting a vocation, finding against the taxpayer upon the fact that the transactions were few and isolated. See also *R. J. Palmer*, 4 B. T. A. 1028; *Fridolin Pabst*, 6 B. T. A. 843; *Harry J. Gutman*, 7 B. T. A. 500; *Louis M. Goldberg*, 9 B. T. A. 1355; *Isadore Finkelstein*, 10 B. T. A. 585; *Margaret B. McLaughlin, Executrix*, 12 B. T. A. 19; *Monte* v. *Eisner*, 266 Fed. 161.

In *Bryce* v. *Keith*, 257 Fed. 133, a loss was found to have been " incurred in trade " where the period was of some length; the transactions complicated, the sum of money involved large, and much time and attention were required. The court cited with approval the wording of Treasury Decision 1989, which it set out, as follows:

> Losses actually sustained during the year incurred in trade are limited by the language of the act itself. In trade is synonymous with business; business has been defined as that which occupies and engages the time, attention and labor of any one for the purposes of livelihood, profit, or improvement; that which is his personal concern or interest; employment, regular occupation, but it is not necessary that it should be his sole occupation or employment. The doing of a single act incidental or of necessity not pertaining to the particular business of the person doing the same will not be considered engaging in or carrying on the business. It is therefore held that no losses are deductible in a return of income save and only those losses permitted and provided for by the statute, viz, those actually sustained during the year, which are incurred in trade.

The respondent cites *Monte* v. *Eisner*, *supra*, a case in which a member of a firm of manufacturers of jute bags, etc., engaged in buying and selling cotton for his individual account in no way connected with the business of the firm. The court cited Treasury Decision 2090 as follows:

> Loss, to be deductible, must be an absolute loss, not a speculative or fluctuating valuation of continuing investment, but must be an actual loss, actually sustained and ascertained, during the tax year for which the deduction is sought to be

made; it must be incurred in trade and be determined and ascertained upon an actual, a completed, a closed transaction. The term "in trade," as used in the law, is held to mean the trade or trades in which the person making the return is engaged; that is, in which he has invested money otherwise than for the purpose of being employed in isolated transactions, and to which he devotes at least a part of his time and attention. A person may engage in more than one trade, and may deduct losses incurred in all of them: Provided that in each trade the above requirements are met. As to losses on stocks, grain, cotton, etc., if these are incurred by a person engaged in trade, to which the buying and selling of stocks, etc., are incident as a part of the business, as by a member of a stock, grain, or cotton exchange, such losses may be deducted. A person can be engaged in more than one business, but it must be clearly shown in such cases that he is actually a dealer, or trader, or manufacturer, or whatever the occupation may be, and is actually engaged in one or more lines of recognized business, before losses can be claimed with respect to either or more than one line of business, and his status as such dealer must be clearly established.

And was of the opinion:

We think that the language "losses incurred in trade" are correctly construed by the Treasury Department as meaning in the actual business of the taxpayer, as distinguished from isolated transactions.

The court was further of the opinion that the transactions in that case were in fact isolated, therefore, not incurred in trade.

The respondent also cites *Lederer* v. *Cadwalader*, 274 Fed. 753, and *Woods* v. *Lewellyn*, 289 Fed. 498, cases under section 209 of the Revenue Act of 1917, involving questions of the rate of taxability of income from a trade or business. In both cases article 8 of Regulations 41 was cited, providing as follows:

*"Trade" in the Case of Individuals.*—In the case of an individual, the terms "trade," "business," and "trade or business" comprehend all his activities for gain, profit, or livelihood, entered into with sufficient frequency, or occupying such portion of his time or attention as to constitute a vocation, including occupations and professions. When such activities constitute a vocation they shall be construed to be a trade or business whether continuously carried on during the taxable year or not, and all the income arising therefrom shall be included in his return for excess profits tax.

In the following cases the gain or income is not subject to excess profits tax; and the capital from which such gain or income is derived shall not be included in "invested capital"; (a) Gains or profits from transactions entered into for profit, but which are isolated, incidental, or so infrequent as not to constitute an occupation; and (b) the income from property arising merely from ownership, including interest, rent, and similar income from investments except in those cases in which the management of such investments really constitute a trade or business.

In the *Woods* v. *Lewellyn* case the court approved of this regulation, saying:

The foregoing in our opinion, is a fair common sense construction of Section 209 of the Act of October 30, 1917. * * * It taxes only income derived from activities in the exercise of the regular occupation, not sums earned incidentally by activities outside that regular occupation.

In both cases the court decided that the income was derived from isolated or incidental transactions, consequently they were not from a trade or business.

We think these decisions and the Commissioner's regulations are all in substantial agreement in principle. Incidental or isolated transactions are uniformly excluded in a consideration of income derived or losses incurred in trade or business, but where, *as in the instant case*, the activities amount to a vocation, then the operating results are attributable to a " trade or business."

We have no doubt that the purchase and sale of cotton futures and margin transactions in stocks carried on through the medium of regular brokers may and often do constitute a vocation, a trade, or a business in which men engage for the purpose of producing a livelihood, and we believe that the evidence in this case warrants the finding that the petitioner was engaged in such trade or business during the calendar years 1921 and 1922, and that his losses during those years should be taken into account in determining net income and also statutory net losses under the provisions of section 204 of the Revenue Act of 1921.

Petitioner's net loss for the year 1921, and also for the year 1922, in the event that a recomputation for that year in accordance with this opinion results in a net loss, should be recomputed on the basis of losses sustained in cotton futures and margin stock transactions closed during each of said years respectively. Cf. *Monroe Washer*, 12 B. T. A. 632.

*Judgment will be entered under Rule 50.*