BENJAMIN I. POWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50380. Promulgated June 27, 1932.

*Hugh F. Purvis, C. P. A.,* for the petitioner.
*James H. Yeatman, Esq.,* for the respondent.

OPINION.

TRAMMELL: In his return for 1928 the petitioner took a deduction for taxes of $6,518.90, of which amount $1,377.57 represented taxes paid in that year for 1927 and $5,141.33 represented taxes for 1928 which accrued in that year but which were not paid during the year. Of the deduction of $6,518.90 taken by the petitioner the respondent disallowed $5,347.78, for the reason that the petitioner kept his books on the cash receipts and disbursements basis. At the hearing the parties stipulated that, if we determine that the petitioner's books were kept on the accrual basis, the deduction allowed by the respondent in 1928 for taxes should be increased by $3,970.21, thus allowing a total deduction of $5,141.33 for taxes for that year, or the amount entered by the petitioner on his books.

The petitioner contends that his books were kept on the accrual basis, while the respondent contends that they were kept on the cash basis.

With respect to income from rents, the petitioner testified that, since these were always paid in advance, there was nothing to be accrued at the end of the year on account of them. This is the explanation offered as to why only " Rents Received " account was carried on his books.

With respect to the account "Accrued Taxes," only the taxes on part of the petitioner's property were entered in it. His testimony indicates that probably the taxes on the remainder of his property were paid as they came due and were taken as deductions in his income-tax returns for the year in which they were paid. No explanation is offered by the petitioner as to why, if he kept his books on the accrual basis as he contends, he deducted in his return for 1928 taxes paid in that year for the year 1927 which, if he had been on the accrual basis, would have been deducted in 1927.

The petitioner carried in his books an account designated "Accrued Interest," but never made any entry therein from December 31, 1924, until December 31, 1930, notwithstanding the fact that during the years 1926, 1927 and 1928 he took deductions in his returns for interest of a total amount in excess of $5,700. Clearly this account during these years was nothing more than a name since the petitioner made no effective use of it.

The respondent has determined that the petitioner's books were kept on the cash receipts and disbursements basis, and his determination is presumed to be correct until the petitioner has shown it to be otherwise. From a consideration of the evidence submitted we are not able to hold that the respondent's determination in this respect is erroneous. The petitioner therefore is entitled to deduct for taxes in 1928 only the amount paid in that year, which was $1,377.57, or $206.45 more than was allowed by the respondent.

The remaining question is whether, in computing net income for 1928, the petitioner is entitled to a deduction of the amount of a net loss sustained in 1927 as a result of his stock in the Powell Furniture Company in the amount of $50,000 having become worthless in that year on account of the bankruptcy of the company. The parties stipulated at the hearing that, if the petitioner is entitled to a deduction for a net loss, the amount thereof is $12,658.09, unless we should hold that the petitioner kept its books on the accrual basis, in which event the amount would be $13,371.65. Since we have sustained the respondent's determination that the petitioner's books were kept on the cash receipts and disbursements basis, the amount of the loss involved is, under the stipulation of the parties, $12,658.09. The controversy as to this issue is whether the agreed net loss was incurred in a trade or business regularly carried on by the petitioner.

In his petition the petitioner alleges that the business regularly carried on by him since 1923 was that of investments and that the loss here involved was sustained in that business.

In 1915 the petitioner acquired stock in the Dade County Furniture Company (later Dade Furniture Company), in which he continued to be a stockholder until July or August, 1921. Sometime between 1918 and 1921 he and two others organized and became stockholders in the Avenue D Furniture Company (later Home Furniture Company). This corporation was later merged with the Powell Furniture Company, a corporation organized by the petitioner in 1923 and in which he became the principal stockholder. In both the Dade County Furniture Company and the Powell Furniture Company the petitioner was president and was active in the conduct of the affairs of all the furniture companies, devoting practically all of his time to their activities. About 1918 the petitioner acquired an interest in the Wayne Building, of which he became sole owner in 1921 and which he leased in 1924 for a period of ninety-nine years. Subsequent to 1919 or 1920 he became a stockholder in the Miami Warehouse Company, a corporation organized to acquire, subdivide and operate certain real estate in which he had theretofore acquired

an interest. Thus from 1915 until 1927, a period of twelve years, the petitioner acquired stock in three furniture companies and in one warehouse company, or a total of four corporations. The petitioner does not contend in his brief that his business was that of investments, but, if he did, we think that in view of the foregoing these occasional stock acquisitions of the petitioner are insufficient to support an allegation that he was regularly carrying on such business. *J. J. Harrington,* 1 B. T. A. 11.

In his brief the petitioner contends that in 1927 he was engaged in the furniture business, a business in which he had been engaged continuously since 1915, and that the loss on his stock was sustained by him in the operation of that business, which he regularly carried on. The respondent contends that the loss was not sustained by the petitioner in the operation of a business regularly carried on by him, but was sustained in a stock transaction as a result of the petitioner's investment becoming worthless.

The loss here involved was one resulting from the petitioner's investment in the Powell Furniture Company having become worthless. It was not a loss resulting from any furniture business carried on by the petitioner. The only connection the petitioner had with any furniture business was that resulting from his being president and stockholder in corporations which carried on the furniture business. The furniture business carried on was the business of the various corporations and not the business of the petitioner. As was said in *Glenn M. Averill,* 20 B. T. A. 1196:

The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs. Therefore, a business regularly carried on by the taxpayer means a business regularly operated by the taxpayer on his own behalf.

There is nothing in the record to indicate that the petitioner ever carried on any furniture business on his own behalf. His activities were in the conduct of the furniture business carried on by the various corporations. Although the petitioner owned five-sixths of the stock of the Powell Furniture Company and devoted practically all of his time to its affairs, the corporation was, nevertheless, a separate and distinct entity and the business transacted in its name was not the business of the petitioner, but of the corporation, and as such was separate and distinct from the affairs of the petitioner. We think the respondent's action in refusing to allow the deduction of $12,658.09 taken by the petitioner for a net loss was correct. See *Louis M. Goldberg,* 9 B. T. A. 1355; affd., 36 Fed. (2d) 551; *Wyatt C. Hedrick,* 20 B. T. A. 258; *Ida A. Van Dyke et al.,* 23 B. T. A. 946.

*Judgment will be entered under Rule 50.*